IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANTONIO HERNANDEZ, | § | |
| | § | |
| v. | § | A-06-CA-416 LY |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint (Clerk's Doc. No. 4); Plaintiff's Brief (Clerk's Doc. No. 15); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 16); and the Social Security Record filed in this case (Cited as "Tr."). Plaintiff appeals from the Administrative Law Judge's (ALJ) determination that he is not "disabled" and presents for review the following issues: (1) whether the ALJ's decision properly considered Plaintiff's impairments and the treating and examining doctors' opinions; (2) whether the ALJ's decision properly assessed Plaintiff's ability to perform the jobs cited; and (3) whether Plaintiff's credibility was properly assessed.

**BACKGROUND**

Plaintiff is a 40 year-old male of Hispanic descent who has very limited communication skills in English; he can speak, read, and write a little bit of English, but has trouble following English speakers who speak quickly. In June 1995, Plaintiff sustained a back injury performing his job (dry-walling). Plaintiff was ordered not to work and received treatment through a worker's compensation claim. In early 1996, he received clearance to return to work with some limitations on what he could lift. The next year, his condition not improved (he complained that it was worse), Plaintiff was

diagnosed with degenerative disc disease and had back surgery. In 1999, the Texas Workforce Commission (TWC) found that Plaintiff only had a 7% impairment rating. There is no record of Plaintiff receiving further treatment for his ailment until 2004, when he was examined by Dr. Elena Arizmendez in a referral by the Texas Rehabilitation Commission (TRC). She diagnosed Plaintiff with chronic pain syndrome and failed back syndrome and noted that he would likely struggle in returning to work given his "need for frequent changes in position . . . ." Her assessment was that Plaintiff could not lift more than 10-15 lbs., should not bend, kneel, or squat, and that he could work 4 hours a day (standing, sitting, or walking for about half of that time). Plaintiff also saw Dr. Albert Molnar who concluded that "[Plaintiff's] functional level has declined so severely that he has become unemployable because of the pain and the inability to bend, twist and lift objects which increases pain." Tr. 174.

The ALJ, after considering all the evidence at the hearing and in the record, determined that Plaintiff had the residual functional capacity to perform jobs that existed in significant numbers in the national economy. Plaintiff then appealed to this Court for review of the decision.

## ANALYSIS

Plaintiff first contends that the ALJ did not properly consider Molnar's and Arizmendez's opinions as his treating and examining doctors, respectively. First, both of these evaluations were done *after* Plaintiff's last date insured, therefore they did not have to be taken into account. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) ("Thus, to prove that she is entitled to disability benefits, Anthony must not only prove that she is disabled, but that she became disabled prior to the expiration of her insured status"). But even if the Court did take them into account (and it seems that while the ALJ did not mention Molnar's assessment, he did utilize Arizmendez's assessment), the opinions do not help Plaintiff in the ways he imagines.

Examining physicians are defined as physicians designated and employed to make medical judgments by the Social Security Administration. 20 C.F.R. § 404.1526(c)); *see also* SOCIAL SECURITY: LAW AND PRACTICE § 37:72 (Timothy E. Travers et al. eds., 1993). Therefore, while Arizmendez is an examining physician for present purposes, it is difficult to understand why Plaintiff chooses to hang his hat on her report because it closely mirrors what the ALJ's conclusion was as to his residual functional capacity (RFC). The ALJ found that Plaintiff had the ability to lift 10 lbs, stand/walk (no more than a city block) 2 hours in an 8 hour workday (and at l hour intervals), and sit 6 hours in an 8 hour workday. The ALJ further found that the extent of Plaintiff's physical activity at work would be to occasionally walk stairs; he also found that Plaintiff could read, write, and understand simple English instructions. This is remarkably similar to what Arizmendez found, delineated above. While it is true that Arizmendez found that Plaintiff could only work a 4-hour day, the ALJ may, "when good cause is shown," give "less weight, little weight, or even no weight . . . to the physician's testimony." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Here, the ALJ's assessment is consistent with the vast majority of the medical opinion in the record, notably the TWC's exhaustive review of Plaintiff's medical records by a peer-review physician synthesizing other doctors' impairment findings. Tr. 274-87. That is to say, the ALJ had "good cause" to give the weight he did to Arizmendez's opinion.

Plaintiff also contends that Molnar was his treating physician and as such the ALJ had to give his opinion greater weight. The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502; *see also Daniels v. Comm. of Soc. Sec.*, 152 Fed. App'x 485, 490 (6th Cir. 2005). The record shows that Plaintiff saw Molnar three times: once in 1996, once in 1999, and again in 2004 (it is worth noting that he may have only seen him twice, the record – and the briefs – are not entirely clear on this point). Regardless, whether Molnar saw

Plaintiff two or three times over the course of 8 years, such infrequency is not enough for Plaintiff to have established "an ongoing treatment relationship" with Plaintiff. *Daniels*, 152 Fed. App'x at 490. Moreover, many of Molnar's statements that Plaintiff complains the ALJ ignored – e.g., "[Plaintiff's] functional level has declined so severely that he has become unemployable because of the pain". . . "he is probably going to have difficult time finding employment" Tr. 174, 175 – are conclusory and contradictory to the other medical evidence, including Dr. Arizmendez's opinion; therefore, it need not be given any weight by the ALJ. *See also Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995) (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other opinions, objective medical evidence, and claimant's own testimony).

Plaintiff's second argument is that the ALJ's findings regarding what work Plaintiff was capable of doing is not supported by the substantial evidence. Pertinent to this issue, the ALJ found that Plaintiff could perform sedentary work, utilizing and understanding only simple English (reading and writing). The jobs that resulted from these prerequisites were: bench assembly person, addressor, and surveillance system monitor.

Plaintiff is correct to point out that as to each of these jobs there is a conflict between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT), the standard reference guide for such issues. For example, according to the DOT both the addressor and surveillance system monitor jobs require a level of proficiency in English that Plaintiff does not possess. *See* Dictionary of Occupational Titles, § 209.587-010, Addressor (language, reading level 2), § 379.367-101 Surveillance System Monitor (language, reading level 3). The Fifth Circuit addressed this exact question – what to do when the VE's testimony and the DOT conflict – in *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). In a passage worth repeating at length, they said:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. As the facts of this case demonstrate, all kinds

of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs. Certainly, a vocational expert's erroneous characterization of the exertional level or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony. Likewise, an explained discrepancy between the ALJ's determination of the claimant's residual functional capacity and the vocational expert's testimony that the claimant can perform certain identified jobs with inconsistent skill requirements may require remand for further exploration.

*Id*. at 146-47. In that case, the Fifth Circuit affirmed the ALJ's decision despite a conflict because of the "[VE]'s clear and unchallenged testimony that Carey could perform the jobs identified with one arm and hand . . . ." *Id*. at 147.

Here, the evidence, "in the context of this record as a whole" supports the ALJ's adoption of the VE's recommendations. First, Plaintiff did not object at the adversarial hearing to the VE's testimony. *See id*. at 146-47. ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing"). Second, here, as in *Carey*, the ALJ specifically asked the VE if Plaintiff could perform these jobs with his linguistic limitations and the "[VE]'s clear and unchallenged testimony" was that he could. *See* Tr. 314-16. In fact, the VE noted that he selected these jobs because they would be able to be performed by someone with Plaintiff's language skills. Tr. 316. Finally, Plaintiff, as the Defendant points out, took an English as a second language course at Austin Community College in 1998, Tr. 15, was able to keep a job in construction, and otherwise able to navigate through life in the United States since

1983 with his current level of language skills (including filling out some of the Social Security forms in this record, Tr. 106-107). Therefore, as the VE testified, there is no reason why Plaintiff could not do the same at a job that does not require him to be proficient in English. The Court rejects Plaintiff's argument.[1]

Finally, Plaintiff asserts that the ALJ's assertion that Plaintiff was not credible was not based on the proper legal standard. Specifically, Plaintiff argues that the ALJ simply declared Plaintiff not credible with no justificatory statements. However, this is clearly not the case. The ALJ's opinion reads that "in giving the claimant the benefit of the doubt as to his subjective allegations of pain, I give the greatest weight to the medical opinion of [Dr. Arizmendez]." Tr. 39. In other words, the ALJ did consider Plaintiff's subjective complaints, but they simply were not in line with Arizmendez's evaluations, or those of any of the other doctors for that matter (save for Molnar). Because the ALJ may discount Plaintiff's subjective statements of pain when they are contradicted by the other objective evidence, *see Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992), this argument is rejected.

## VII. RECOMMENDATION

Given the foregoing, the Magistrate Court **RECOMMEND**S that the District Court **AFFIRM** the decision of the Commissioner and **ENTER JUDGMENT** in favor of the Defendant.

## VIII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

---

[1] The Court need not take up Plaintiff's argument that the bench assembly job is not sedentary because the ALJ need only point to *one* job the Plaintiff could perform.

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 15th day of June, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE